IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| DAVID ALEXANDER HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CHRISTOPHER STARR, in his personal | ) | Case No. |
| capacity; JEFF PAPPAS, in his personal | ) | Jury Demanded |
| capacity; RONALD CHAPERON, JR., in his | ) | |
| personal capacity; JOSEPH COFFEY, in his | ) | |
| personal capacity; DAVID CUNNINGHAM, | ) | |
| in his personal capacity; CITY OF | ) | |
| KNOXVILLE; and KNOX COUNTY, | ) | |
| TENNESSEE, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, David Alexander Hayes, by and through counsel, and for his Complaint against Defendants, avers as follows:

**Nature of Action**

1. Plaintiff brings this action under 42 U.S.C. § 1983 to recover money damages and for declaratory and equitable relief to redress Defendants' violations of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

**Jurisdiction and Venue**

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

3. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and a substantial part of the events and omissions giving rise to Plaintiff's claims

occurred in this district.

## Parties

5. Plaintiff is a well-known social justice and police reform advocate and former city council candidate who rose to prominence for his impassioned speeches in the wake of the Knoxville Police Department ("KPD") police shooting death of teenager Anthony Thompson, Jr.

6. Defendant Jeff Pappas is a lieutenant with the who oversees KPD police services in the Central Business Improvement District (CBID), a special district of downtown Knoxville encompassing city properties and landmarks. Defendant Pappas is a "person" under 42 U.S.C. § 1983 and at all relevant times acted under color of law. Defendant Pappas is sued in his personal capacity.

7. Defendant Christopher Starr is a KPD police officer. He is a "person" under § 1983 and at all relevant times acted under color of law. Defendant Starr is sued in his personal capacity.

8. Defendant Ronald Chaperon, Jr., is a Knox County Sheriff's Deputy. He is a "person" under § 1983 and at all relevant times acted under color of state law. Defendant Chaperon is sued in his personal capacity.

9. Defendant Joseph Coffey is a Knox County Sheriff's Deputy. He is a "person" under § 1983 and at all relevant times acted under color of state law. Defendant Coffey is sued in his personal capacity.

10. Defendant David Cunningham is a Knox County Sheriff's Deputy. He is a "person" under § 1983 and at all relevant times acted under color of law. Defendant Cunningham is sued in his personal capacity.

11. Defendant Knoxville, Tennessee is a municipality organized under the laws of the State of Tennessee. Defendant Knoxville is a "person" under 42 U.S.C. § 1983.

12. Defendant Knox County, Tennessee is a unit of local government organized under the laws of the State of Tennessee.  Defendant Knox County is a "person" under 42 U.S.C § 1983.

## Facts

13. In early January 2022, Robert Nathan Bailey, a forty-one-year-old African American man, died while in the custody of KPD police officers.  Uncertainty surrounding the circumstances of Bailey's death, and the City's refusal to provide his family with timely answers, sparked the attention of local social justice advocates.

14. Meanwhile, the City was hosting a series of "listening sessions" seeking public input over the selection of a new police chief to replace outgoing chief Eve Thomas, who had recently announced her resignation amid controversies involving police misconduct.

15. To encourage community participation at these events, City officials purposely declined to have city police officers present at these "listening sessions."

16. On January 7, 2022, the City held the first of its "listening session" in the small assembly room of the City-County Building.

17. Several groups with different interests attended the meeting as did Plaintiff and others concerned with the KPD's treatment of Bailey's death.

18. Plaintiff arrived about thirty minutes into the event, which he observed to be peaceful and well structured.

19. After a short while meeting with City officials and other advocates, Plaintiff left the small assembly room to visit with a police officer who some in the community supported to become the new police chief.

20. Leaving the room, Plaintiff was walking in the direction of nearby metal detectors where he had last seen the officer he hoped to visit with.

21. Suddenly Defendant Chaperon grabbed Plaintiff's arm from behind, and twisted it behind Plaintiff's back while saying Plaintiff was under arrest. Plaintiff asked, "why," but received no answer.

22. Plaintiff did not resist arrest. Instead, he shouted for other meeting goers to come out and document the arrest, which they did, and peacefully lowered himself to the floor in a prone position.

23. Without justification or need, either Defendant Coffey or Defendant Cunningham hog-tied Plaintiff's legs. Defendants Chaperon, Coffey, and Cunningham then carried Plaintiff facedown across the skybridge leading to the main lobby within the City-County building.

24. Rather than carrying Plaintiff by his arms, Defendants had hold of Plaintiff's sweater which was wrapped around his neck restricting his airways. Plaintiff repeatedly asked to be let down so he could breathe but Defendants refused. Near the end of the skybridge, Plaintiff lost consciousness.

25. Defendants took Plaintiff to a holding room with a window looking out to the main lobby room. Defendants, and possibly other presently unknown officers, quickly covered the window with their bodies so the public could not see in nor document what was happening.

26. Defendants sat Plaintiff on a chair in the corner of the room with a wall behind Plaintiff and to his left.

27. After a brief exchange of words, Defendant Chaperon stood over Plaintiff and began aggressively pressing his body against Plaintiff pinning Plaintiff to the wall. While crushing Plaintiff with his body weight, Defendant Chaperon then began shoving Plaintiff's head against the walls to his left and back and then used his hands to press on Plaintiff's face and then on his neck, which caused Plaintiff to begin coughing as he was choking.

28. As Plaintiff was coughing and choking, Defendant Chaperon accused Plaintiff of spitting at him and began punching Plaintiff in the face at least three times with a closed fist.

29. Defendant Chaperon stopped his assault on Plaintiff moments before several other police officers entered the room carrying a spit hood, which was unnecessary and only used to further humiliate Plaintiff.

30. The spit hood was applied in such a manner that it gagged Plaintiff and further restricted his breathing. Plaintiff was treated throughout with brutal and unnecessary force, and officers waited until Plaintiff was in a transport vehicle before finally readjusting the spit hood so Plaintiff could breathe (and speak) freely.

31. At some point Plaintiff learned that his arrest stemmed from an outstanding warrant in which KPD officer Defendant Starr accused Plaintiff of obstructing a highway or other passageway in violation of Tenn. Code. Ann. § 39-17-307.

32. The warrant was issued on April 22, 2021, over eight months prior to the arrest on January 7, 2022, and concerned an encounter between Defendant Starr, Plaintiff, and others during a police reform demonstration that Plaintiff attended on the evening of April 21 outside KPD headquarters.

33. Dashcam footage from Defendant Starr's police vehicle shows Plaintiff and others standing in the east bound lane of Howard Baker, Jr. Avenue. Defendant Starr turns his lights on, tells Plaintiff and the other demonstrators to move out of the roadway, which they did following a brief exchange of words. Defendant Starr then drives away without incident. The entire encounter lasts less than a minute.

34. At a preliminary hearing held in May 2022, Defendant Starr testified that he recognized Plaintiff from prior encounters, and that his KPD supervisor instructed him to proceed with an

arrest warrant the next day, April 22.

35. Defendant Starr also testified, however, that after the warrant was issued, KPD officials gave an order to hold the warrant and not to serve it until a later date.

36. Plaintiff was never informed of the April 2021 arrest warrant until his arrest at the Jan. 7 public forum.

37. The April 22 warrant could have been executed at any time during the over eight month period preceding Plaintiff's January 7, 2022, arrest.

38. In fact, over the course of those eight months, Plaintiff attended numerous events within the City in which KPD officers were also in attendance. No one tried to serve him an arrest warrant. Further, Plaintiff's home address and the places he frequents are well known to the KPD.

39. Plaintiff avers that the KPD chose to hold the April 2021 arrest warrant to maximize the chilling and humiliating effect of arresting Plaintiff in public.

40. KPD knew from social media and other sources that Plaintiff intended to attend the January 7 "listening session," but as earlier averred the Mayor had instructed KPD police officers not to attend the public forum.

41. Upon information and belief, to work around the Mayor's directive, Defendant Pappas along with other KPD officials requested that the Knox County Sheriff's Office execute the arrest warrant at the January 7 public forum, one designed to promote community involvement with police.

42. Defendant Knoxville and Defendant Knox County purposely chose the January 7 event because arresting Plaintiff there would have the most chilling effect on, not only Plaintiff's speech and conduct, but anyone else who would dare to vocally express themselves on the issue

of police reform.

## Count I - § 1983
## Lieutenant Pappas

43. Plaintiff incorporates by reference the allegations contained in Paragraphs 1–42 as if set forth fully herein.

44. Defendant Pappas acted under color of law and had the final authority delegated to him by the City of Knoxville to oversee and set the objectives and orders related to all police services related to the Office of Special Events, which organized the Jan. 7 public forum on City property.

45. For purposes of this case, Lieutenant Pappas was a final policymaker for Defendant Knoxville.

46. Upon information and belief, Lieutenant Pappas and/or other KPD officials purposely delayed executing the April 2021 arrest warrant, which itself unlawfully targeted Plaintiff for his protected speech and conduct, to maximize the chilling effect of having the Sheriff's office arrest Plaintiff at public event in which KPD officers were not supposed to interrupt.

47. Defendant Pappas and others acting under color of law and in concert with him purposely violated Plaintiff's First Amendment right to engage in protected speech and symbolic and expressive conduct.

48. As a direct and proximate result of Defendant Pappas's violations of Plaintiff's constitutional rights, Plaintiff suffered physical and economic injuries and harm for which Defendant Pappas is personally liable under § 1983.

49. Plaintiff seeks all relief available under § 1983, including monetary and injunctive relief including a decree requiring police retraining and reform in the area of policing public events.

50. Plaintiff seeks attorney's fees, costs, and expenses of this action under 42 U.S.C. §

1988.

## Count II - § 1983
### Starr

51. Plaintiff incorporates by reference the allegations contained in Paragraphs 1–49 as if set forth fully herein.

52. Defendant Starr acted under color of law.

53. Defendant Starr knew that Plaintiff was engaged in protected conduct on the evening of April 21, 2021, during his encounter with Plaintiff.

54. Under the totality of the circumstances, Plaintiff was not in violation of Tenn. Code Ann. § 39-17-307 and Defendant Starr made no arrest when he could have.

55. Defendant Starr and other KPD officials purposely decided to target Plaintiff solely because of his public prominence by unlawfully causing an arrest warrant to issue that was intended solely to chill Plaintiff's future speech and conduct protected by the First Amendment.

56. Defendant Starr and other KPD officers acting under color of law and in concert with him violated Plaintiff's First and Fourth Amendment rights by targeting him for his protected speech and conduct and by causing an arrest warrant to issue for unlawful reasons and without probable cause.

57. As a direct and proximate result of Defendant Starr's violations of Plaintiff's constitutional rights, Plaintiff suffered physical and economic injuries and harm for which Defendant Pappas is personally liable under § 1983.

58. Plaintiff seeks all relief available under § 1983 against Defendant Starr.

59. Plaintiff seeks attorney's fees, costs, and expenses of this action under § 1988.

## Count III - § 1983
## City of Knoxville

60. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1–59 as if set forth fully herein.

61. Defendant Knoxville maintained a policy or custom of acquiescence to police misconduct, including with respect to selective prosecution of individuals and the issuance of unlawful warrants, which was the moving force behind Plaintiff's constitutional injuries.

62. Defendant Knoxville maintained a policy or custom of failing to adequately train and supervise its police officers on how to make constitutionally sound law enforcement decisions, which was the moving force behind Plaintiff's constitutional injuries.

63. Defendant Pappas is a final policymaker of Defendant Knoxville and his unlawful conduct in furtherance of violating Plaintiff's First Amendment rights was the moving force behind Plaintiff's constitutional injuries.

64. Defendant Knoxville violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments.

65. As a direct and proximate result of Defendant Knoxville's violations of Plaintiff's constitutional rights, Plaintiff suffered physical and economic injuries and harm for which Defendant Knoxville is municipally liable under § 1983.

66. Plaintiff seeks all relief available under § 1983 against Defendant Knoxville.

67. Plaintiff seeks attorney's fees, costs, and expenses of this action under § 1988.

## Count IV - § 1983
## Chaperon, Coffey, and Cunningham

68. Plaintiff incorporates by reference the allegations contained in Paragraphs 1–67 as if set forth fully herein.

69. At all times material hereto, Defendant Chaperon, Coffey, and Cunningham acted under color of law.

70. Defendants used excessive and unreasonable force against Plaintiff in violation of the Fourth Amendment.

71. Defendants acted in concert to charge Plaintiff with crimes he did not commit and instituted judicial proceedings and legal process against him without probable cause, proceedings and legal process brought in bad faith and with malice, likewise in violation of the Fourth Amendment.

72. On or about May 4, 2022, Defendants' charge of inciting a riot against Plaintiff was dismissed by the Knox County Criminal Court.

73. Defendants Chaperon, Coffey, and Cunningham violated Plaintiff's rights under the Fourth Amendment by using excessive force against Plaintiff and by pursuing a malicious prosecution against him.

74. Defendants Chaperon, Coffey, and Cunningham and others acting under color of law and in concert with them purposely violated Plaintiff's Fourth Amendment rights.

75. As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff suffered physical and economic injuries and harm for which Defendants are personally liable under § 1983.

76. Plaintiff seeks all relief available under § 1983 against these Defendants.

77. Plaintiff seeks attorney's fees, costs, and expenses of this action under § 1988.

### Count IV- § 1983
### Knox County

78. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1–77 as if set forth fully herein.

79. Defendant Knox County maintained a policy or custom of acquiescence to police misconduct as evidenced in part by the fact that Defendant Chaperon was permitted to remain on the force after his 2014 involvement in the police mistreatment of a University of Tennessee student, which was the moving force behind Plaintiff's constitutional injuries.

80. Defendant City of Knoxville maintained a policy or custom of failing to adequately train and supervise its police officers on how and when to use force, which was the moving force behind Plaintiff's constitutional injuries.

81. Defendant Knox County violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments.

82. As a direct and proximate result of Defendant Knox County's violations of Plaintiff's constitutional rights, Plaintiff suffered physical and economic injuries and harm for which Defendant Knox County is municipally liable under § 1983.

83. Plaintiff seeks all relief available under § 1983 against Defendant Knox County.

84. Plaintiff seeks attorney's fees, costs, and expenses of this action under § 1988.

## Count V
## Assault and Battery

85. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1–84 as if set forth fully herein.

86. The acts of Defendants Chaperon, Coffey, and Cunningham constituted an unlawful assault and battery against Plaintiff.

87. Defendant Knox County is vicariously liable.

88. As a direct and proximate result of Defendants' assault and battery of Plaintiff, Plaintiff suffered physical injuries and harm for which Defendants are liable.

## Count VI
## Civil Conspiracy

89. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1–88 as if set forth fully herein.

90. By engaging in, participating in, and acquiescing to the unlawful conduct averred herein all Defendants formed an unlawful conspiracy in violation of 42 U.S.C. § 1985 to deprive Plaintiff of rights and privileges secured by the United States Constitution.

91. As a direct and proximate result of Defendants' conspiracy to violate Plaintiff's constitutional rights, Plaintiff suffered physical and economic injuries and harm for which Defendants are liable under §§ 1983 and 1985.

92. Plaintiff seeks all relief available under §§ 1983 and 1985 against Defendants

93. Plaintiff seeks attorney's fees, costs, and expenses of this action under § 1988.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully prays for relief as follows:

1. That Defendants be made to answer this Complaint within the time allotted by the Federal Rules of Civil Procedure.

2. An award of all damages and available relief under § 1983 in an amount to be determined by the jury;

3. An award of all prejudgment and post-judgment interest;

4. A declaratory judgment against Defendants that practices applied to Plaintiff were unconstitutional and an injunction enjoining these Defendants from further such conduct;

5. An award of reasonable attorney's fees and costs.

6. Such other legal and equitable relief to which Plaintiff may be entitled; and

7. Plaintiff further demands a Jury to try this cause.

Respectfully submitted,

/s/Ursula Bailey
Ursula Bailey (TN Bar # 020616)
LAW OFFICES OF URSULA BAILEY
422 S. Gay Street, Suite 301
Knoxville, TN 37902
Phone: (865) 522-9942
Fax: (865) 522-9945
E-mail: ubailey65@gmail.com

Richard E. Collins (TN Bar No. 024368)
STANLEY, KURTZ & COLLINS, PLLC
422 S. Gay Street, Suite 301
Knoxville, TN 37902
Phone: (865) 522-9942
Fax: (865) 522-9945
E-mail: dan@knoxvilleattorney.com
E-mail: richard@knoxvilleattorney.com

**Counsel for Plaintiff**